IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MELISSA ANNE DANCICO,                )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        Civil Action No. 1:24-cv-1317 (RDA/WEF)
                                     )
MLT SYSTEMS LLC,                     )
                                     )
        Defendant.                   )
_____    )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant MLT Systems LLC's Motion to Partially Dismiss the Complaint (Dkt. 4). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 5), Plaintiff's Opposition Brief (Dkt. 15), and Defendant's Reply Brief (Dkt. 16), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons that follow.

### I.  BACKGROUND

#### A.  Factual Background[1]

In September 2022, Defendant hired Plaintiff Melissa Anne Dancico as a human resource manager with a starting salary of $90,000. Dkt. 1 ¶ 12. In March 2023, Plaintiff received a raise

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

bringing her total annual salary to $105,000.  *Id.* ¶ 13.  In May 2023, Plaintiff was promoted to become the Director of Human Resources.  *Id.* ¶ 14.

In May 2023, Plaintiff met with Mark Tornai, Defendant's President and Plaintiff's then-manager, to discuss concerns regarding Defendant's hiring practices and Defendant's ability to complete an EEO-1 Component Report.  *Id.* ¶ 15.  The EEO-1 Component Report is a mandatory annual data collection that requires private sector employers with more than 100 employees and federal contractors with more than 50 employees to submit workforce demographic data to the Equal Employment Opportunity Commission (the "EEOC").  *Id.* ¶ 16.  The following week, Tornai replaced himself as Plaintiff's manager with his daughter, Clarissa Tornai-Barrett, the Vice President of Resource Management and removed Plaintiff from her supervisory role over Defendant's recruitment.  *Id.* ¶ 17.

Plaintiff then emailed Tornai-Barrett seeking clarity regarding her role going forward and asserting "[t]his change feels somewhat retaliatory and completely unexpected following the conversation addressing some personnel concerns with Mark."  Dkt. 1-2; Dkt. 1 ¶ 18.  After that email, Plaintiff perceived a shift in attitude towards her by management.  *Id.* ¶ 19.  Accordingly, Plaintiff wrote an apology email and apologized for "making anyone feel uncomfortable or disrespected."  Dkt. 1-3; Dkt. 1 ¶ 19.

On August 9, 2023, Plaintiff scheduled a meeting with Tornai and Tornai-Barrett to discuss concerns regarding "legal compliance."  Dkt. 1 ¶ 21.  Plaintiff alleges that she was berated at the meeting and then written up for crying.  *Id.*  The write-up asserted that, "[d]uring the majority of this conversation, you were in tears and clearly distraught over various situations that have taken place since the start of your employ.  This repeated conduct is the basis of this counseling."  *Id.*; Dkt. 1-4.

On September 27, 2023, Plaintiff informed Tornai-Barrett that she would need to take leave for an upcoming surgery and advised that, once she received more information from the surgeon, she would then prepare the required documents.  Dkt. 1 ¶ 22.

In October 2023, Defendant's Recruiter, Andrew Grenier, was terminated without Plaintiff's knowledge.  *Id.* ¶ 23.  Thereafter, his duties fell to Plaintiff.  *Id.*

In November 2023, Plaintiff reminded Tornai-Barrett of her upcoming surgery and need for medical leave.  *Id.* ¶ 24.

On November 7, 2023, Plaintiff received a $1,232 performance-based bonus.  *Id.* ¶ 25.

On December 1, 2023, Tania Griffith, another employee, reported that she had been sexually assaulted while at work by one of Defendant's customers, an apparently intoxicated active member of the United States Marine Corps.  *Id.* ¶ 26.  Upon receiving the report, Plaintiff began investigating the incident.  *Id.* ¶ 27.  As set forth by Ms. Griffith, the alleged sexual assault consisted of the following interactions:

- An apparently intoxicated male individual asked Ms. Griffith, who was wearing white, "are you trying to blend into the snow?"

- The individual followed that with the remark: "You are stunning."

- He then approached "too closely" and "tried to caress [her] hand sexually."

- A female individual named Lynn apologized for the man's behavior and asked if Ms. Griffith wanted to press charges.

- The man stayed in a small debriefing room with Lynn until he was released at the end of the day.

Dkt. 1-7 (Ms. Griffith's statement).

Also on December 1, 2023, Plaintiff attended a meeting with Tornai, Tornai-Barrett, Vice President of Professional Services Dustin Thorn, Chief Operating Officer William (Jerry) Balestreri, Vice President of Contract Services Zoe Zerbe, and Tiffany Goldberg, a person

unaffiliated with Defendant but who was assigned to the government contract supporting the alleged assailant's unit. *Id.* ¶ 28. At the meeting, Goldberg and Defendant's management questioned whether there needed to be an investigation. *Id.* Plaintiff advised that an investigation was necessary according to Defendant's policies and the law and advised that a statement was needed from Ms. Griffith. *Id*.

On December 4, 2023, Plaintiff took sick leave to work from home after testing positive for COVID-19. *Id.* ¶ 29.

On December 6, 2023, while Plaintiff was still on leave, Ms. Griffith was directed by Tornai-Barrett to provide a witness statement by the end of the day. *Id.* ¶ 30. Tornai-Barrett also indicated that, "[i]n terms of an assigned Government Investigator, that is none of our business. We are not the military and do not get involved in any military and/or Government processes. If an investigator is assigned and they have questions for MLT personnel about the incident, that individual will present me with a Letter . . . ." Dkt. 1-6 (Exhibit F).[2] In response to Tornai-Barrett's directive, Ms. Griffith reported what happened. Dkt. 1 ¶ 31; Dkt. 1-7 (Ms. Griffith's statement).

Tornai-Barrett forwarded Ms. Griffith's statement to a Marine Corps Contract Officer Representative, a subordinate of the Marine's commander. Dkt. 1 ¶ 33. On December 7, 2023,

---

[2] Plaintiff alleges in her Complaint that Tornai-Barrett stated that "the sexual assault of its female employee was 'none of our business.'" Dkt. 1 ¶ 30 (quoting Exhibit F). That is an inaccurate description of the exhibit, which does not state that the assault is "none of our business" but that the assignment of a "Government Investigator" is "none of our business. Dkt. 1-6. As the Fourth Circuit has recognized, "in the event of a conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *Davidson v. United Auto Credit Corp.*, No. 1:20-cv-1263, 2021 WL 2003547, at *1 (E.D. Va. May 19, 2021) ("Courts are not required to accept as true allegations that contradict exhibits attached to the complaint.").

Plaintiff learned of the interaction between Tornai-Barrett and Ms. Griffith.  *Id.* ¶ 34.  Plaintiff then emailed Tornai, Tornai-Barrett, and Balestreri inquiring: "Has there been an investigator identified from the command or a process for maintaining confidential information for a potential investigation."  *Id.* ¶ 35; Dkt. 1-8.[3]  In response, Tornai explained how Defendant was handling the investigation.  *Id.* ¶ 35.

On December 8, 2023, Tornai sent out a company-wide annual climate survey.  *Id.* ¶ 37.  Although Plaintiff developed the survey, Tornai prohibited Plaintiff from seeing individual surveys from the employees.  *Id.*  Plaintiff also alleges that Tornai-Barrett began micro-managing Plaintiff.  *Id.* ¶ 38.

On December 11, 2023, Plaintiff returned to the office in person.  *Id.* ¶ 39.

On December 12, 2023, Plaintiff received a "Star Gram," an apparent indication that she was doing good work.  *Id.* ¶ 40; Dkt. 1-9.  Also, on December 12, 2023, Plaintiff complained to Tornai-Barrett that she felt she was being retaliated against as a result of attempting to properly investigate Ms. Griffith's sexual harassment complaint.  *Id.* ¶ 41.

On December 15, 2023, Plaintiff asked Thorn when she should expect to begin working on issuing bonuses as part of her role as Director of Human Resources.  *Id.* ¶ 44.  Thorn told her that he knew nothing about bonuses.  *Id.* ¶ 44.  On December 22, 2023, Plaintiff received a bonus despite never having worked on bonuses as is described in her job description.  *Id.* ¶ 45.

---

[3] Here again, Plaintiff's allegations in her Complaint do not comport with the exhibits attached to her Complaint.  Plaintiff's allegations suggest that she notified Defendant that it was not complying with proper protocols, but the email that she sent is a much more neutral inquiry.  Accordingly, the Court quotes directly from the attached exhibit.  *Fayetteville Investors*, 936 F.2d at 1465.

On January 2, 2024, Plaintiff asked Thorn for the bonus records so that she could document them for the Office of Federal Contract Compliance Programs. *Id.* ¶ 46. Thorn advised that he did not know where the spreadsheets were. *Id.* ¶ 47.

On January 4, 2024, Plaintiff met with Tornai-Barrett. *Id.* ¶ 47. During this meeting, Plaintiff asked Tornai-Barrett where Plaintiff could find the bonus records so that she could document the results. *Id.* She did not receive an answer. *Id.*

That same day, Plaintiff informed Tornai-Barrett that she would be taking medical leave for her surgery on January 18, 2024. *Id.* ¶ 48. Approximately one hour later, Plaintiff was informed that she was terminated as part of an alleged "restructuring" by Tornai-Barrett and Balisteri. *Id.* ¶ 49.

Plaintiff filed a charge with the EEOC and was subsequently issued a right to sue letter. *Id.* ¶ 51.

## B.   Procedural Background

On July 30, 2024, Plaintiff filed her Complaint. Dkt. 1. On August 28, 2024, Defendant filed its Motion to Dismiss Counts I and II. Dkt. 4. On September 15, 2024, Plaintiff filed her Opposition brief. Dkt. 15. Defendant filed then filed its Reply on September 16, 2024. Dkt. 16.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual

allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. ANALYSIS

Plaintiff's Complaint asserts four causes of action: (i) a retaliation claim for wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") (Count 1); (ii) a sex discrimination claim for wrongful termination under Title VII (Count 2); (iii) an interference claim pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") (Count 3); and (iv) a retaliation claim pursuant to the FMLA (Count 4). Dkt. 1. In its Motion to Dismiss, Defendant seeks only to dismiss the retaliation and sex discrimination claims under Title VII, arguing that Plaintiff has not alleged that she engaged in protected activity and that Plaintiff has alleged no facts in support of her sex discrimination claim. Dkt. 5 at 2. Plaintiff opposes the Motion.[4]

---

[4] Before addressing the arguments with respect to each Count, the Court must first address an argument raised by Plaintiff in her Opposition Brief. Plaintiff spends several pages arguing that she is not required to plead a precise legal theory and that she is not required to establish a *prima facie* case in order to survive a motion to dismiss. Dkt. 15 at 2-3. In this regard, Plaintiff is correct; Plaintiff is not required to establish a *prima facie* case to state a claim. *See Swierkiewicz v. Sorema*

A.      Retaliation

In order to plausibly allege a claim of retaliation under Title VII, Plaintiff acknowledges that she must have engaged in a protected activity.  Dkt. 15 at 4 (citing Title VII's antiretaliation provisions).  As both parties acknowledge, opposition to employment discrimination qualifies as a protected activity under Title VII.  *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (noting that "when an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity" (emphasis original)).  The dispute therefore is whether any of the actions alleged by Plaintiff qualify as an oppositional protected activity.

Plaintiff does not identify or make an argument with respect to any particular alleged protected activity, instead making a list of all of her interactions with management at Defendant.  Dkt. 15 at 5-6.  Most of Plaintiff's claimed protected activities relate to Plaintiff informing Defendant of a legal requirement – as required by her position as Director of Human Resources – and then her perception of retaliation to her provision of that information.  Dkt. 1 ¶¶ 12-14, 15, 17, 18, 20, 21.  But as courts of appeals have recognized, such "job-related policy discussions are not protected."  *Morris v. McCarthy*, 825 F.3d 658, 673 (D.C. Cir. 2016).  This is so because "they do not oppose any discrete practice that [Plaintiff] reasonably could have believed discriminated on

---

*N.A.*, 534 U.S. 506, 510-15 (2002) (noting that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement").  Plaintiff is, however, required to allege facts that "nudge" her claims "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680.  In other words, Plaintiff is required to allege facts from which one could reasonably infer discrimination (or retaliation).  *See Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (discussing whether allegations are sufficient to support a reasonable inference of discrimination sufficient to support a motion to dismiss).  In analyzing the facts alleged in the Complaint, the Court does not require that Plaintiff set forth a *prima facie* case but does analyze whether Plaintiff's claims are plausible and whether her allegations support a reasonable inference of discrimination or retaliation.

the basis of race, color, religion, sex, or national origin." *Id.* Indeed, Plaintiff's allegations in this regard are vague and entirely void of any allegation that her discussions with Tornai or Tornai-Barrett in May 2023 were in any way connected to Title VII. *See, e.g.*, Dkt. 1 ¶ 15 (Plaintiff's conversation with Tornai in May 2023 only vaguely refers to "concerns" regarding "hiring practices" and does not connect those concerns to any concern regarding discrimination). This is insufficient to plausibly allege that Plaintiff engaged in a protected activity under Title VII. *See Bonds v. Leavitt,* 629 F.3d 369, 384 (4th Cir. 2011) (holding that "Title VII is not a general bad acts statute" and does not prohibit retaliation "based on opposition to discriminatory practices that are outside the scope of Title VII"). Thus, these allegations fail to support that Plaintiff engaged in a protected activity.

Two of Plaintiff's allegations do, however, warrant further discussion: (i) Plaintiff's December 7, 2023 email; and (ii) Plaintiff's December 12, 2023 conversation with Tornai Barrett. Dkt. 1 ¶¶ 35, 41. The Court agrees with Defendant that Plaintiff's December 7, 2023 neutral inquiry into the status of the investigation of Ms. Griffith's complaint does not constitute a protected activity. As courts recognize, inquiries of this nature are not protected activities because they do not oppose any activity nor do they put the employer on notice of any opposition. *See, e.g.*, *Jennings v. Sci. Applications Int'l Corp.*, No. 2:18-cv-1127, 2022 WL 3714599, at *3 (D.S.C. Aug. 29, 2022) (finding that "inquiries" and complaints about fairness did not amount to protected activities); *Lawrence v. Thomson Learning*, No. 1:05-cv-329, 2007 WL 1593270, at *31 (N.D.N.Y. June 1, 2007) (holding that "mere inquiry about the AAP is not an allegation of an unlawful employment practice, and thus, does not constitute protected activity"). The lack of notice to Defendant that Plaintiff was opposing any sort of Title VII conduct through her neutral inquiries following up on the investigation of another employee's complaint is emphasized by the

9

fact that Plaintiff was the Director of Human Resources, whose job it was to be involved in such investigation.  Thus, as pled, the December 7, 2023 email does not constitute a protected activity.

Plaintiff fares better, however, with her allegations with respect to the December 12, 2023 meeting with Tornai-Barrett.  On December 12, 2023, Plaintiff alleges that she met with Tornai-Barrett and told Tornai-Barrett that she felt that she was being retaliated against for attempting to properly investigate Ms. Griffith's complaint.  Dkt. 1 ¶ 41.  Neither party – despite both being represented by counsel – addresses this specific allegation.  Although it is unclear whether Plaintiff will be able to successfully establish after discovery that her alleged complaint to Tornai-Barrett was a protected activity, Plaintiff has plausibly alleged that she made a complaint and implicit in that complaint is an opposition to how Defendant was handling a sexual harassment claim.  This is enough to plausibly allege that she engaged in a protected activity.  *DeMasters*, 796 F.3d at 417 ("When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity").  It is true that Plaintiff's belief that a Title VII violation – in this case the failure to treat seriously Ms. Griffith's complaint – was occurring must be reasonable, but based on the allegations in the Complaint, Plaintiff has alleged a reasonable belief here.  *McIver v. Bridgestone Americas, Inc*., 42 F.4th 398, 411 (4th Cir. 2022) (recognizing that "only when an employee has 'an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress' is the employee's conduct 'protected'").

Because, at this stage, the Court finds that Plaintiff has plausibly alleged that she engaged in a protected activity, Plaintiff has also plausibly alleged a retaliation claim.  Here, less than one month after engaging in the alleged protected activity, Plaintiff's employment was terminated.  *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (recognizing that engaging in

a protected activity "just a month before she was terminated" tends to show causation). Accordingly, the motion to dismiss with respect to Count 1 will be denied.

### B.      Sex/Gender Discrimination

Defendant next seeks to dismiss Plaintiff's claim of sex- or gender-based discrimination. Although Plaintiff need not establish a *prima facie* case of discrimination, Plaintiff must allege *some* facts that make her claim of sex/gender discrimination plausible. Plaintiff has failed to do so here, as Plaintiff has alleged *no* facts from which the Court can reasonably infer that Defendant took any actions against Plaintiff based on her gender.

Plaintiff's entire gender discrimination claim appears premised on her allegation that she was written up for crying approximately five months before her termination. Dkt. 15 at 11. Plaintiff argues that this discipline constitutes trafficking in sex-based stereotypes. *Id.* Plaintiff is incorrect. Frankly, it is Plaintiff's argument that employs the sex-based stereotype because implicit in her argument is the stereotype that crying or becoming emotional is a female trait. *Id.* And, here, Plaintiff concedes that she *was* emotional during the meeting. Dkt. 1 ¶ 21. Moreover, Plaintiff has not alleged, and it appears from the exhibits to the Complaint that Plaintiff cannot allege, that Defendant connected Plaintiff's crying to her gender. *Id.*; Dkt. 1-4 (acknowledging that "situations can certainly be frustrating to the point of tears," but noting that Plaintiff's "strong reactions are unpredictable and have become disruptive" and that for her position "a calm and professional demeanor is an absolute must"). Absent an allegation that Defendant somehow connected Plaintiff's crying to her gender,[5] the allegation that Plaintiff was disciplined for her

---

[5] In her Opposition Brief, Plaintiff also tries to suggest that other women were punished for crying – namely Ms. Griffith. Dkt. 15 at 11 (arguing "the next time a woman cried at MLT's offices and tried to complain about sex discrimination, MLT took affirmative steps to prevent the report and investigation"). Plaintiff, however, never alleged in her Complaint that any other women employed by Defendant ever cried and Ms. Griffith's statement does not indicate that she

emotions during a meeting is not sufficient to create a reasonable inference of gender discrimination. *See Hogan v. Hayden*, 406 F. Supp. 3d 32, 50-51 (D.D.C. 2019) (holding that the plaintiff failed to establish a claim of gender discrimination where a supervisor noted that the plaintiff was emotional and cried in a meeting, and where the supervisor noted that the plaintiff's demeanor in that meeting was a basis for her termination); *Arjangrad v. JPMorgan Chase Bank NA*, No. 3:10-cv-01157, 2012 WL 1189750, at *23 (D. Or. Apr. 9, 2012) ("[Plaintiff] fails to present any authority recognizing [being emotional] as [a] commonly accepted female norm[].."); *Jackson v. St. Catherine Hosp., Inc.*, No. 2:12-cv-426, 2016 WL 466508, at *5 (N.D. Ind. Feb. 8, 2016) ("Seemingly, it is [plaintiff's] belief that any comment about her emotional state was also a statement about her gender, as if only women can be characterized as emotional when they are loud and belligerent. Although that is her belief, there is no evidence that it was [her supervisor's]."); *Kob v. City. of Marin*, No. 07-cv-2211, 2009 WL 10680775, at *8 (N.D. Cal. Nov. 25, 2009) ("Plaintiff claims to have been called 'emotional,' 'irrational,' 'abrasive,' 'difficult,' 'confrontational,' and 'divisive.' Those adjectives are not particular to women and can

---

cried. *See* Dkt. 1; Dkt. 1-7. Plaintiff's suggestion that Defendant "pressured a victim of sexual assault to not press charges" is also not alleged in her Complaint and, indeed, Ms. Griffith's statement says that she was asked whether she wanted to press charges. *Compare* Dkt. 15 at 12 *with* Dkt. 1 and Dkt. 1-7. Plaintiff may not amend her Complaint through her Opposition Brief. *See Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 472 n.9 (E.D. Va. 2015) (recognizing that it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss"). Additionally, Plaintiff's argument that Defendant "took steps to prevent the report and investigation" and violated a duty of confidentiality is belied by the documents that she cites. Dkt. 15 at 11. Tornai-Barrett's email did not say that the sexual assault of an employee was "none of our business," but rather stated that the assignment of a "Government Investigator" is "none of our business" because "[w]e are not the military." Dkt. 1-6. Moreover, although Plaintiff asserts that Defendant was "required" to keep Ms. Griffith's statement confidential, the website upon which Plaintiff relies appears to be a set of "Harassment Policy Tips" – not requirements – and also explicitly states that an employer should "[r]equire managers . . . to report [sexual harassment] to individuals who are authorized to respond," in this case persons in the military. Dkt. 1 ¶ 32 (citing Harassment Policy Tips, *available at* https://www.eeoc.gov/employers/small-business/harassment-policy-tips).

just as easily describe a man.").[6]  Accordingly, Plaintiff's allegations regarding the August 2023 meeting and related discipline fail to support a claim of sex/gender discrimination.[7]

Plaintiff also appears to rely on the difference in treatment between herself and the Marine. But Plaintiff and the Marine were not similarly situated, such that the Court could infer that the difference in their treatment is based on sex/gender.  Indeed, it is completely unclear how Defendant could treat Plaintiff and the Marine in a similar way given that Plaintiff was an employee of Defendant, and the Marine was the employee of a customer.  *See Lee v. Stegall, Inc.*, No. 7:21-cv-528, 2022 WL 3971042, at *6 (W.D. Va. Aug. 31, 2022) (dismissing Title VII discrimination claim where plaintiff "failed to identify a sufficiently similar comparator to give rise to an inference of discrimination on the basis of race").  Moreover, Plaintiff's allegations of a sex/gender-based termination are undermined by the fact that the Complaint notes the termination of another employee associated with human resources – a man.  Dkt. 1 ¶ 23 (discussing termination

---

[6]  By contrast, there is of course a gender-based element sufficient to support a discrimination claim where the *employer* connects an emotion to the plaintiff's gender.  *See, e.g.*, *Smith v. Verge Mobile, Inc.*, No. 3:22-cv-544, 2023 WL 8654911, at *3-4 (M.D. Tenn. Dec. 14, 2023) (holding that statements by a supervisor that "*women* are too emotional" were sufficient to establish a claim of discrimination (emphasis added)).  Here, the discipline essentially stated, "*you* are too emotional," and connected it to her role as the Director of Human Resources, for which a professional demeanor was viewed as essential, rather than to Plaintiff's gender.  Dkt. 1-4.  Moreover, far from gendering Plaintiff's response, the write-up acknowledged that there are times that "can certainly be frustrating to the point of tears."  *Id.*

[7]  Plaintiff's reliance on other case law is also misplaced.  *See* Dkt. 15 at 11 (citing *EEOC v. R&R Ventures, Inc.*, 244 F.3d 334 (4th Cir. 2001)).  The cases that Plaintiff cite correctly hold that: "A work environment consumed by remarks that 'intimidate, ridicule, and maliciously demean the status of *women* can create an environment that is as hostile as an environment that contains unwanted sexual advances.'"  *R&R Ventures*, 244 F.3d at 340 (emphasis added).  But Plaintiff's Complaint does not allege pervasive abuse (her Complaint alleges a single incident where she was berated during a meeting) nor does it allege that Tornai's conduct was intended to demean women as a group.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting that Title VII was not meant to be a "general civility code for the American workplace").  Thus, the case law to which Plaintiff cites in this regard is inapposite.

of Andrew Grenier).   Finally, Plaintiff's allegation that the surgery that she required was gynecological in nature does not help her cause that her termination was related to her gender. Dkt. 15 at 12.  Plaintiff's Complaint contains no allegations from which the Court could infer that the *nature* of the surgery as opposed to the need for surgery and associated leave (which forms the basis for Plaintiff's two FMLA claims) motivated any of Defendant's decisions.   Thus, none of Plaintiff's factual allegations nudge Plaintiff's claim of sex/gender discrimination from possible to plausible.  *Iqbal*, 556 U.S. at 680.  Accordingly, Plaintiff has failed to state a plausible claim of discrimination in Count 2 and the motion to dismiss will be granted in that regard.

## IV. CONCLUSION

In sum, for purposes of the motion-to-dismiss stage, Plaintiff has plausibly alleged a retaliation claim premised on a protected activity – her December 12, 2023 meeting with Tornai-Barrett.  Plaintiff has not, however, plausibly alleged that her termination was related to her sex/gender and Count 2 will be dismissed.  Although Defendant sought dismissal with prejudice (Dkt. 4), Defendant has not discussed futility of amendment and Plaintiff requested leave to amend any deficient claim (Dkt. 15 at 12).  Because it is not immediately apparent to the Court that Plaintiff cannot allege some set of circumstances that would support a sex/gender discrimination claim, the Court will provide Plaintiff with *one* opportunity to amend her Complaint.

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 4) is GRANTED IN PART and DENIED IN PART.  The motion is granted insofar as the claim of sex/gender discrimination in Count 2 is dismissed.  The motion is denied insofar as it seeks dismissal of the retaliation claim in Count 1; and it is

FURTHER ORDERED that Count 2 is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff may file any Amended Complaint within FOURTEEN (14) DAYS of the entry of this Memorandum Opinion and Order.  If Plaintiff fails to file an Amended Complaint by that date, the Court will assume that Plaintiff is foregoing her sex/gender discrimination claim and will issue a scheduling order.

It is SO ORDERED.

Alexandria, Virginia
December 11, 2024

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge